UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

UNITED STATES OF AMERICA

v.                                              Case No. 2:18-CR-101 JD

LAMONT COLEMAN

**<u>OPINION AND ORDER</u>**

Defendant Lamont Coleman is facing multiple charges relating to drug dealing and possessing a firearm as a felon. He moved for a *Franks* hearing, *see Franks v. Delaware*, 438 U.S. 154 (1978), asking to present evidence that investigative police officers intentionally omitted material facts from the affidavit in support of a search warrant for his dwelling. Mr. Coleman is thus seeking to suppress evidence obtained during the search. The Court held the hearing as requested but, during the hearing and in his post-hearing briefs, Mr. Coleman seemingly abandoned his *Franks* argument and now insists that, on its face, the affidavit lacks probable cause for issuing a search warrant. Since Mr. Coleman has failed to develop his *Franks* argument, he's waived it, *see United States v. Stadfeld*, 689 F.3d 705, 712 (7th Cir. 2012) ("Undeveloped arguments are considered waived."), but that argument fails on the merits anyway, and his new argument fairs no better.

**A. Search Warrant Affidavit**

To obtain a search warrant, the investigators submitted a probable cause affidavit to a magistrate judge. It can be summarized as stating the following:

An apartment building at 4104 Madison Street in Gary, Indiana, and an unoccupied ranch-style house next door at 4120 Madison Street are located on the same city lot. According to the Lake County Assessor's Office, Mr. Coleman owns both buildings. The car Mr. Coleman drives and which he parks at the apartment building is registered to 4120 Madison Street. His driver's license is also registered at that address. The law enforcement database shows that Mr. Coleman uses "KD" as an alias. In addition, Mr. Coleman identifies himself as KD on his publicly available Facebook account.

On four different days (November 6, 13, 16, and 27, 2017), Confidential Source 1 (CS1) called a cellphone at 219-613-5944 to arrange heroin purchases with Leroy Coleman[1] whom he'd meet each time outside the apartment building to get the drugs.

Two months later (January 18, 2018), another confidential source (CS2) called the same telephone number to arrange a heroin purchase from KD. After the phone call, CS2 picked up the drugs outside the apartment building from a woman who exited the apartment building and who went back into the building after the sale. On January 25 and 29, CS2 again called the *5944 number and spoke with Trina to arrange additional heroin purchases. Each time he then drove to the apartment building where he exchanged money for the drugs with an older black man who, after the sale, went back inside the apartment building.

On February 6 and 8, CS1 and CS2, respectively, called the *5944 number again to arrange heroin purchases from KD. Tony Petty completed those sales by coming outside from the apartment building and exchanging the drugs for money.

---

[1] Leroy Coleman is not to be confused with Defendant Lamont Coleman ("Mr. Coleman").

On February 19, "UC" called the *5944 number to arrange a purchase of heroin from KD. Once UC arrived at the apartment building, he called KD to let him know he was there. A moment later, Augustine Pike exited the building with heroin.

The drug deals continued on March 13, April 19, May 10, and August 14, with UC and a third confidential source (CS3) calling the *5944 number and speaking with Trina. However, March 13 was the last date for the drug delivery just outside the apartment building. During each subsequent drug deal, UC and CS3 were told to go to a nearby location where they were met by various individuals who exited from and returned to the apartment building. The investigators believe that the location of the drug deliveries moved because of law enforcement's growing attention to the area following citizen complaints and a shooting of Tony Petty just a few blocks away.

For some time during the investigation, a video surveillance van was parked in front of the apartment building. The recordings show what appear to be drug runners going out and back in the east door of the apartment building between 8 am and 9 pm. Numerous times, either Mr. Coleman or Ms. Owens is seen to briefly enter the unoccupied house next door. Upon exiting, they return to Apartment 1 through the south door, shortly after which the carriers leave for drug deliveries. During several controlled purchases, the investigators observed Mr. Coleman and Ms. Owens engaging in the same pattern of activity.

The investigators' observations make them believe that the south door leads into Apartment 1 and that the east door leads into a hallway common to all the apartments in the building. Mr. Coleman and Ms. Owens mostly use the south door, but everyone else uses the east door. The investigators believe that Mr. Coleman and Ms. Owens live in Apartment 1.

The investigators found that the pen register for the *5944 number shows dozens and sometimes hundreds of calls of short duration per day from numerous other phone numbers.

Finally, the affiant recounts common drug dealing practices and submits that there's probable cause to believe that a search of Apartment 1, the next-door ranch, and a separate Delaware Street building would uncover evidence of criminal activity and contraband.[2]

**B. Legal Analysis**

The Supreme Court held in *Franks v. Delaware* that a search warrant is not valid if the police obtain it by deliberately or recklessly presenting false material information to the issuing judge. *United States v. McMurtrey*, 704 F.3d 502, 508 (7th Cir. 2013). In other words, "a search must be suppressed if a defendant proves by a preponderance of the evidence that: (1) the affidavit contained material false statements or omissions; (2) these false statements or omissions were made with deliberate or reckless disregard for the truth; and (3) these false statements or omissions were necessary to a finding of probable cause." *United States v. Gregory*, 795 F.3d 735, 743 (7th Cir. 2015)

In his brief in support of a *Franks* hearing, Mr. Coleman argued that the Affidavit fails to state that there were any drugs in Apartment 1 at 4104 Madison Street, that anyone purchased drugs from him, that he personally delivered drugs to anyone, or that he took drugs into Apartment 1. At the hearing, however, rather than seeking to introduce evidence that the affiant's omissions were deliberately or recklessly deceptive, Mr. Coleman shifted his focus to a straight-up examination of whether the Affidavit states probable cause for a search warrant to issue. Even now, Mr. Coleman doesn't argue that the affiant guilefully omitted material facts or that there

---

[2] Mr. Coleman is challenging only the search of Apartment 1. *See* DE 272 at 1.

4

were material facts that, had they been presented to the magistrate judge, would have sunk any attempt to establish probable cause. And that's understandable because none of the omissions that Mr. Coleman points out pertain to the veracity of the Affidavit. Nor are they exculpatory. Accordingly, there's no basis to suppress the search under *Franks v Delaware*.

Next, the Court will consider Mr. Coleman's argument that the Affidavit lacks probable cause. "Before issuing a search warrant, an issuing officer must determine whether probable cause exists for doing so." *United States v. Olson*, 408 F.3d 366, 370 (7th Cir. 2005). The issuing officer must conduct this review in light of the "totality of the circumstances." *Illinois v. Gates*, 462 U.S. 213, 238 (1983). "Probable cause sufficient to support a warrant exists where 'the known facts and circumstances are sufficient to warrant a man of reasonable prudence in the belief that contraband or evidence of a crime will be found.'" *United States v. Olson*, 408 F.3d 366, 370 (7th Cir. 2005) (quoting *Ornelas v. United States*, 517 U.S. 690, 696 (1996)). "As the [Supreme] Court frequently has remarked, probable cause is a flexible, common-sense standard." *Texas v. Brown*, 460 U.S. 730, 742 (1983). "A 'practical, nontechnical' probability that incriminating evidence is involved is all that is required. *Id*. "In issuing a search warrant, a magistrate is given license to draw reasonable inferences concerning where the evidence referred to in the affidavit is likely to be kept, taking into account the nature of the evidence and the offense." *United States v. Singleton*, 125 F.3d 1097, 1102 (7th Cir. 1997). The Seventh Circuit recognizes that "evidence of drug dealing is likely to be found where the dealers live." *Id*. In fact, "[t]his circuit has consistently held that, for a search warrant, probable cause 'does not require direct evidence linking a crime to a particular place.'" *United States v. Zamudio*, 909 F.3d 172, 175 (7th Cir. 2018) (citing cases). In summary, "so long as the magistrate had a 'substantial basis

for . . . conclud[ing]' that a search would uncover evidence of wrongdoing, the Fourth Amendment requires no more." *Gates*, 462 U.S. at 236.

Here, Mr. Coleman argues that the Affidavit lacks probable cause that drugs could be found in Apartment 1. He submits that the drug deals were set up by calling the *5944 number, which, as a cell phone, is not tied to any particular location, let alone Apartment 1. Moreover, he argues the Affidavit doesn't claim that Mr. Coleman owned the *5944 number and does not account for the fact that different persons answered the phone. In addition, Mr. Coleman didn't deliver drugs to any confidential source and those who did never came out of the south door that led directly into Apartment 1. Moreover, none of the informants were ever seen going inside Apartment 1. In fact, according to Mr. Coleman, there's no evidence that Mr. Coleman lived in Apartment 1. Finally, he claims no one identified Mr. Coleman as being KD.

None of Mr. Coleman's contentions establish the lack of probable cause to search Apartment 1. The Court will start with Mr. Coleman's last assertion. CS2 placed a heroin order with KD on January 18; CS1 did so on February 6 and 8, and UC followed on February 19. Of course, none of them referred to the dealer as "Lamont Coleman" but the investigators reasonably concluded that KD is Mr. Coleman on the basis of his alias in the law enforcement database and his references to himself as KD on his publicly available Facebook page. Moreover, CS2 told the investigators that he or she could call KD or KD's girlfriend "Trina" at the *5944 number to order heroin for a pickup outside the apartment building where Mr. Coleman was observed numerous times coming out of Apartment 1 and presumably retrieving contraband from the next-door building, which he owned and at which address his car and driver's license were registered. These assertions in the Affidavit are sufficient to show that KD is likely to be Mr. Coleman.

Next, Mr. Coleman appears to believe that there cannot be probable cause for searching Apartment 1 unless he's caught red-handed with the drugs in the apartment. After all, he argues that the investigators had no evidence that the drugs were located there or that the cellphone orders were received in the apartment, as if those factors are an absolute requirement for finding probable cause. But the affiant was not tasked with certifying that drugs were inside the apartment; rather, his job in drafting the affidavit in support of a search warrant was to show that "'the known facts and circumstances are sufficient to warrant a man of reasonable prudence in the belief that contraband or evidence of a crime will be found.'" *Olson*, 408 F.3d at 370 (7th Cir. 2005). This he has done. The Affidavit shows that the car Mr. Coleman drives and that he parks at the apartment building is registered to 4120 Madison Street. His driver's license also lists 4120 Madison Street as his address. Moreover, according to the Lake County Assessor's Office, Mr. Coleman owns the 4104 and 4120 Madison Street buildings. After several orders for heroin from the confidential sources, Mr. Coleman or Ms. Owens were seen leaving Apartment 1 through the south door, entering for only a brief period of time the next-door ranch at 4120 Madison, and returning to Apartment 1; then various persons would come out the east door of the apartment building for drug deliveries. The same pattern was often observed even when the "couriers" were delivering drugs to random buyers. These facts show probable cause that drug-dealing evidence could be found in Apartment 1. To hold otherwise would be to ignore common sense.

Mr. Coleman also argues that the Affidavit does not say that he personally handed the drugs to anyone or that he owned the "drug phone." This changes nothing. After the confidential sources would call the *5944 number to place an order for heroin, enough activity was traced to Apartment 1 for a reasonable person to believe that evidence of criminal activity was located

there. This is true regardless of who owned the phone, where the phone was located at the time of the calls, and regardless of whether it was answered by Mr. Coleman himself, his girlfriend Trina, or someone else. In fact, this is also true regardless of whether Mr. Coleman stayed in Apartment 1 permanently. The activity pattern suggests a drug conspiracy involving several persons, including Mr. Coleman (KD). That he himself did not hand over heroin to anyone only suggests that he played a different role in the conspiracy and does not remove probable cause from the Affidavit.

Finally, even if Mr. Coleman could show that the Affidavit does not implicate him, probable cause to search Apartment 1 would remain unchanged. Trina Owens frequently answered the *5944 number to accept heroin orders. Following these calls, she was often seen exiting Apartment 1 through the south door, briefly entering the next-door ranch, and returning to Apartment 1 the same way she came out. The drug deliveries then followed. In light of this, common sense suggests that drug-dealing activity was afoot in Apartment 1, even if Mr. Coleman had nothing to do with it. In short, the Affidavit contains probable cause for a search warrant to issue.

## C. Conclusion

For the reasons stated above, the Court DENIES Mr. Coleman's motion to suppress the search of Apartment 1 at 4104 Madison Street, Gary, Indiana.

SO ORDERED.

ENTERED: March 11, 2021

_____/s/ JON E. DEGUILIO_____
Chief Judge
United States District Court